IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

| | |
|---|---|
| EQUITAS DISABILITY ASSOCIATES, LLC, | **DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S COMPLAINT** |
| Plaintiff, | |
| v. | Case No.: 1:14-cv-01644 (CRC) |
| DAVID A. BRYANT, et al. | |
| Defendants. | |

---

Come now Defendants, David A. Bryant and Frederick J. Daley, Jr., pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure, and move this Court to dismiss Plaintiff Equitas Disability Associates, LLC's ("Equitas") Complaint against them for lack of personal jurisdiction over Defendants and for failure to state a claim upon which relief can be granted.  In support thereof, Defendants state as follows:

## INTRODUCTION

This is an action against three Illinois attorneys (one of which the D.C. Superior Court already dismissed without prejudice) by a defunct and unregistered District of Columbia corporation.[1]  Although Plaintiff alleges that this Court has personal jurisdiction over the three Illinois defendants under the District of Columbia Long-Arm Statute (D.C. Code § 13-423), both

---

[1] Plaintiff's certificate of incorporation has been revoked by the District of Columbia Department of Consumer and Regulatory Affairs.  *See* Exhibit E attached hereto.  Under D.C. Code §29-101.06(a)(3), it is a violation of the District of Columbia Business Organizations Code for a D.C. domestic corporation such as Plaintiff to do business in the District of Columbia after it has been administratively dissolved.  Under earlier versions of the D.C. law of corporations, "a corporation must pay its fees before being able to maintain an action in the courts of this jurisdiction." *York & York Construction Co. v. Alexander*, 296 A.2d 710, 713 (D.C. 1973); *see also Columbia Institute of Radio & Television Broadcasting, Inc. v. Shehyn*, 336 F.2d 974, 977-978 (D.C. Cir. 1964).  Although the current corporation statute does not have the same specific language as the earlier version discussed in *York* and *Shehyn*, the prohibition against doing business in the District in the current statute would seem to prohibit the maintenance of this suit at least until the corporate certificate is reinstated.

the facts alleged by Plaintiff and the facts set forth in the attached declarations and affidavits of Messrs. Bryant, Daley and DeBofsky demonstrate that there is no basis for this Court to assert personal jurisdiction over defendants. The alleged contact by Mr. Bryant with the District of Columbia was solely in his capacity as representative of the non-party (and now dissolved) law firm of Daley, DeBofsky & Bryant, P.C. and, as such, cannot form the basis of personal jurisdiction over him.  Moreover, the alleged contact is insufficient to establish jurisdiction over Mr. Bryant under either the long-arm statute or the Due Process Clause of the United States Constitution.  Messrs. Daley and DeBofsky had no contacts whatsoever with the District of Columbia in reference to the issues in this case.  As a result, the court may not exercise personal jurisdiction over any Defendant and the Complaint should be dismissed.

The Complaint also fails to state a cause of action against any of the defendants.  Three of the five counts are based on contracts between Plaintiff's assignee and Daley, DeBofsky & Bryant, P.C.  Under the allegations of the Complaint and the specific terms of the contracts – which were attached as exhibits to the Complaint – defendants were not parties to the contracts and have no personal obligations under them.  The claim of unjust enrichment similarly does not state a cause of action because no benefit *to defendants* is alleged – the only alleged benefit is under a contract with Daley, DeBofsky & Bryant, P.C.  Finally, the fraud count against defendant Bryant cannot stand as it fails to meet the enhanced pleading requirements of Rule 9(b).  Rather, the fraud count is an improper effort to bring contract claims under the guise of fraud.  Neither the alleged facts nor the law of the District of Columbia permits this.

## PROCEDURAL HISTORY

This action was originally filed on February 10, 2014 in the District of Columbia Superior Court. On April 7, 2014, the Plaintiff limited liability company filed an Amended Complaint in the Superior Court. On August 27, 2014, all of Plaintiff's counsel filed a Motion to Withdraw from representation of plaintiff in this case, to which motion plaintiff consented.  By order dated September 8, 2014 the Superior Court granted the withdrawal of all of Plaintiff's counsel and noted that any future service of court papers be sent to directly to plaintiff. On September 18, 2014, by order of the Superior Court, Defendant DeBofsky was dismissed without prejudice based on Plaintiff's failure to timely file proof of service. The remaining Defendants, David A. Bryant and Frederick J. Daley, Jr., filed a notice of removal to the United State District Court for the District of Columbia on October 1, 2014.

## ARGUMENT

**I. Plaintiff Has Not Asserted Any Facts That Would Subject the Non-Resident Defendants to Personal Jurisdiction in the District of Columbia Under the Long-Arm Statute Or That Would Satisfy Due Process.**

Plaintiff's allegation that this Court has personal jurisdiction over Defendants is based solely on D.C. Code Section 13-423, commonly known as the District of Columbia long-arm statute. (Comp. ¶ 4)[2].  However, Plaintiff has not alleged, and no facts support an allegation, that Defendants Bryant and Daley, or previously dismissed Defendant DeBofsky (hereinafter collectively referred to as "Defendants"), have connections to the District of Columbia sufficient to subject them to personal jurisdiction in the District of Columbia.

---

[2] Although the Complaint at issue is the second complaint filed in this action, Plaintiff refers to it as the "Complaint" and not as the "Amended Complaint;" Defendants therefore refer to it as the "Complaint" throughout the present Motion.

Plaintiff bears the burden of proving that each Defendant is subject to personal jurisdiction. *See Mitchell Energy Corp. v. Mary Helen Coal Co., Inc.*, 524 F. Supp. 558, 561 (D.D.C. 1981) ("the party seeking to invoke federal jurisdiction has the burden of establishing that it exists").  Courts undertake a two-step analysis in determining whether a plaintiff has established personal jurisdiction:

> First, the Court must determine whether jurisdiction may be exercised under the District of Columbia's long-arm statute, D.C. Code Section 13-423 (2001). Second, the Court must determine whether the exercise of personal jurisdiction would satisfy the requirements of Due Process.

*Lans v. Adduci Mastriani & Schaumberg, LLP*, 786 F. Supp. 2d 240, 266-67 (D.D.C. 2011) (citing *GTE New Media Services, Inc. v. BellSouth Corp.*, 199 F.3d 1343 (D.C. Cir. 2000)).  We address each inquiry in turn.

The District of Columbia long-arm statute establishes what conduct subjects a non-resident to personal jurisdiction in the District of Columbia for claims arising from that conduct. The long-arm statute provides:

> A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's: (1) transacting any business in the District of Columbia; (2) contracting to supply services in the District of Columbia; (3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia; (4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered,  in the District of Columbia; (5) having an interest in, using, or possessing real property in the District of Columbia; (6) contracting to insure or act as surety for or on any person, property, or risk, contract, obligation, or agreement located, executed, or to be performed within the District of Columbia at the time of contracting, unless the parties otherwise provide in writing; or (7) marital or parent and child relationship in the District of Columbia . . .

D.C. Code § 13-423(a) (2001).[3]  Subsection (b) directs that "when jurisdiction over a person is based solely upon this section, only a claim for relief arising from acts enumerated in this section may be asserted against him." D.C. Code § 13-423(b) (2001).

The facts alleged in the Complaint do not satisfy the requirements of the long-arm statute, and Plaintiff therefore has failed to meet its burden to establish personal jurisdiction.  Moreover, as shown in the accompanying declarations and affidavit of Defendants and Mr. DeBofsky,[4] the Defendants have no personal connection to the District of Columbia relating to the facts alleged in the Complaint.[5]

The gravamen of the Complaint is that Defendants' former, now-dissolved Illinois law firm allegedly breached obligations owed to Plaintiff, a now-revoked District of Columbia limited liability company. (Compl. ¶ 5).[6] The Complaint, however, does not allege that the *individual* Defendants – lawyers who work, reside and are barred in Illinois, and have never lived, worked, practiced law or represented clients in the District of Columbia[7] - personally engaged in business in the District of Columbia; contracted to supply services in the District of Columbia; caused tortious injury to Plaintiff in the District of Columbia through an act or

---

[3]  Subsections 5-7 require no discussion because the Complaint does not relate to real property, insurance or surety, or family law matters.

[4] Plaintiff originally named Mark DeBofsky as a Defendant, but Mr. Debofsky was dismissed without prejudice by the D.C. Superior Court because Plaintiff failed to timely file proof of service of process. The Order of Dismissal is attached hereto as **Exhibit A**. In an abundance of caution, and to prevent any subsequent effort by Plaintiff to add Mr. DeBofsky to this action, this Memorandum of Law in Support of Defendants' Motion to Dismiss also shows that Mr. DeBofsky, like Defendants, is not subject to personal jurisdiction in the District of Columbia.

[5] See Declarations of Defendant Bryant and Mr. DeBofsky and Affidavit of Defendant Daley attached as **Exhibits B, C and D**.  *See D'Onofrio v. SFX Sports Group, Inc.*, 534 F. Supp. 2d 86, 90 (D.D.C. 2008) (on questions of personal jurisdiction, "the Court is not limited to the allegations in the complaint, but 'may receive and weigh affidavits and other relevant matter to assist in determining the jurisdictional facts'" (citing *United States v. Philip Morris*, 116 F. Supp. 2d 116, 120 (D.D.C. 2000)).

[6] As Paragraph 5 of the Complaint shows, the alleged obligations were not owed to plaintiff but to its assignor, Fulcrum Law Group, PLLC.

[7] See Exhibit B ¶¶ 3-7, Exhibit C ¶¶3-7, Exhibit D ¶¶ 3-7.

omission in the District of Columbia; or caused tortious injury to Plaintiff and regularly do or solicit business in the District of Columbia.[8]  To the contrary, the accompanying declarations and affidavit establish that none of Defendants personally has engaged in business in the District of Columbia or otherwise engaged in conduct (or omissions) sufficient to subject them to long-arm jurisdiction in the District of Columbia.

Defendants formerly were partners in a now-dissolved professional corporation (a law firm) in Illinois (the "Corporation").  The Corporation entered into certain contracts with Plaintiff's predecessor, but the individual Defendants were not parties to the contracts.  As to the Corporation, Plaintiff admits that its predecessor, Fulcrum Law Group, PLLC,[9] solicited the Corporation for business purposes.  *See* Complaint ¶ 12 (Fulcrum carefully identified "lawyers with whom to share [a supposedly valuable collection of documents Plaintiff terms "the Archive"] and with whom to partner and consult in pursuing recoveries on behalf of disability insurance claimants").[10]  Daley, DeBofsky & Bryant, P.C. was originally approached in June 2007 by Brian Abeles, a Tampa, Florida resident, at the American Conference Institute in Boston, Massachusetts regarding a potential business venture.[11]  Brian Abeles did not form Fulcrum Law Group, PLLC until November 2007.[12] There is no allegation that the Corporation solicited business in the District of Columbia, let alone that any Defendant did so.

Plaintiff alleges that it had communications and meetings with one or more Defendants, but it ignores that Defendants at all times were acting on behalf of the Corporation.  Plaintiff's

---

[9] Fulcrum Law Group assigned its interest in the contracts underlying the Complaint to Plaintiff. (Compl. ¶ 5).

[10] See Exhibit B ¶13.

[11] See Exhibit B ¶¶13-14.

[12] See Exhibit B ¶14 and **Exhibit F**, Fulcrum Law Group, PLLC's District of Columbia DCRA report.

predecessor and the Corporation exchanged approximately five hundred fifty (550) emails and held approximately nine in-person meetings to discuss a potential business relationship and negotiate the contracts; Plaintiff alleges that one of those meetings took place in the District of Columbia, in which Defendant Bryant was present solely in his representative capacity and to discuss potential ethical concerns about entering into a contract with Fulcrum Law Group.[13] (Compl. ¶ 17).  Neither Defendant Daley nor Mr. DeBofsky were present at this event, and neither otherwise transacted business in the District of Columbia.[14] (Compl. ¶17).  Seven other meetings concerning the contracts between Fulcrum Law Group and the Corporation took place in Chicago, Illinois, and one meeting took place in St. Louis, Missouri.[15] Ultimately, the Corporation executed the contracts in Illinois.  Performance by the Corporation was to be in Chicago and any alleged breach of contract, if it occurred, necessarily would have occurred in Chicago.  Furthermore, nothing in the contracts involves acts or work to be done in the District of Columbia.  Indeed, the consideration Plaintiff's predecessor offered under the contracts was access to supposedly valuable information maintained in Tampa, Florida.[16]

Plaintiff fails to establish that Defendants are subject to the jurisdiction of the courts of the District of Columbia under D. C. Code §13-423(a)(1) ("transacting any business in the District of Columbia") or the Due Process Clause of the U.S. Constitution.  As this Court has held, the "due process analysis requires a determination as to whether there is a 'sufficient connection between the defendant and the forum State to make it fair to require defense of the action in the forum.'" *Mitchell Energy Corp*., 524 F. Supp. at 563 (citations omitted). The

---

[13] See Exhibit B ¶¶ 13-20.

[14] See Exhibits C and D.

[15] See Exhibit B ¶¶ 14-17.

[16] See Exhibit B ¶ 22.

Constitutional Due Process requirement "turns on whether defendant's 'minimum contacts' with the District of Columbia are such that 'maintenance of the suit does not offend traditional notions of fair play and substantial justice.'. . . The defendant must have '*purposefully directed his activities at residents of the forum*, and the litigation results from alleged injuries that arose out of or relate to those activities.'" *Lans v. Adduci Mastriani & Schaumberg, LLP*, 786 F. Supp. 2d at 267 (emphasis added).

As is clear from the discussion above, no Defendant has a meaningful connection with the District of Columbia such that subjecting him to personal jurisdiction would satisfy either the D.C. long-arm statute or due process.

In *Mitchell Energy Corp*., the defendant, a corporation organized in Kentucky and operating primarily in Indianapolis, Indiana, was not authorized to do business in the District of Columbia, did not maintain any offices or registered agents in the District of Columbia, and was initially solicited by the plaintiff through the plaintiff's broker.  542 F. Supp. at 560.  The plaintiff's only assertion that the defendant had a connection to the District of Columbia was that two of the defendant's employees came to D.C. to meet with representatives of the plaintiff concerning the parties' contracts.  *Id*.

This Court held that the defendant's contacts with the District of Columbia were "not sufficient to support jurisdiction under D.C. Code s 13-423 or under the Due Process Clause of the Fourteenth Amendment." *Id*. at 561. The Court explained that a non-resident company who agrees to contract with a D.C. resident does not, without more, subject itself to jurisdiction in the District of Columbia:

> [D]efendant did not solicit plaintiff in Washington, D.C. Rather, the solicitation went from plaintiff to defendant in Indianapolis. The contract was not to be performed by defendant in the District. . . The breach of contract . . . if it occurred, occurred in Kentucky. The documents reflecting the contract . . . were either signed by each party in its own jurisdiction and exchanged through the mail, or . . . fully executed in Indianapolis. Exchange of letters and telephone communications with a party in the District of Columbia alone is not considered a jurisdictionally significant contract by District of Columbia courts.

*Id.* at 564 (citations omitted).  The Court held that "defendant's activities in the jurisdiction do not constitute 'transacting business' under D.C. Code s. 13-423, and . . . subjecting defendant to the jurisdiction of this court based on extremely limited contact with the District of Columbia would violate the requirements of the due process set forth by the Supreme Court." *Id.* (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S. Ct. 154, 90 L. Ed. 95 (1945)).  As the Court explained, "the only connection of the District of Columbia with this transaction is that it is where the plaintiffs happened to be located." *Id.* at 561.

Defendants' connection to the District of Columbia is even more remote than that of the defendant in *Mitchell Energy Corp.*  Here, Defendants (unlike the defendant in *Mitchell Energy*) did not have any contractual relationship with Plaintiff; rather, their former law firm did.[17]  The contacts of their former law firm, an Illinois professional corporation, are not attributable to Defendants personally.  *See Lewy v. Southern Poverty Law Center, Inc.*, 723 F. Supp. 2d 116, 129 (D.D.C. 2010) ("as a general rule, courts cannot exert jurisdiction over individual corporate officers or employees 'just because the court has jurisdiction over the corporation'").  With respect to individual employees of a corporation, "personal jurisdiction over the employees or officers of a corporation in their individual capacities must be based on their personal contacts with the forum and not their acts and contacts carried out solely in a corporate capacity." *D'Onofrio v. SFX Sports Group, Inc.*, 534 F. Supp. 2d 86, 91 (D.D.C. 2008) (citing *Wiggins v.*

---

[17] Defendants were not parties to the contracts at issue, as will be discussed *infra*.

*Equifax*, 853 F. Supp. 500 (D.D.C. 1994)); *See also, Richard v. Bell Atlantic Corp., Inc*., 976 F. Supp. 40, 49 (D.D.C. 1997); *Jankovic v. International Crisis Group*, 2005 WL 3276227, n. 6 (D.D.C. 2005). "Acts committed within the scope of employment cannot be imputed to the individual defendants to establish personal jurisdiction over them." *Richard*, 976 F. Supp. at 50. In instances where contacts with the forum were exclusively in relation to defendants' corporate responsibility. This court has reasoned, 'defendants are clearly not "doing business" with the District of Columbia.'" *D'Onofrio v. SFX Sports Group, Inc.,* 534 F. Supp. 2d 86, 91 (D.D.C. 2008) (citing *Wiggins v. Equifax*, 853 F. Supp. 500 (D.D.C. 1994)); *See also, Richard,* 976 F. Supp. at 49.

In *D'Onofrio*, the plaintiff attempted to add both the former Chief Financial Officer and the head of Human Resources at Clear Channel Communications as defendants in their individual capacities as parties to her discrimination suit. *Id*. at 88. The court determined that although the two defendants had indeed had contact with the plaintiff, a D.C. resident, during her employment with Clear Channel, those were "all actions taken pursuant to [their] official corporate duties and responsibilities," and "none of the allegations involve either [defendant] . . . doing business with the District in their personal capacities." *Id*. at 92. Based upon the two defendants' limited contact with the District under the purview of their employment with Clear Channel, "these acts, carried out within the scope of [defendants'] employment, do not create sufficient contacts to establish personal jurisdiction." *Id*. (citing *Wiggins v. Equifax*, 853 F. Supp. at 503).

Similarly, in *Richard* the court refused to exert personal jurisdiction over individual defendants, holding that where the defendants officers and employees of a corporation had visited the District of Columbia "regularly" to speak to employees and participated in corporate

programs in the District of Columbia, acting within the scope of their employment and those acts, "cannot be imputed to the individual defendants to establish personal jurisdiction over them." *Richard*, 976 F. Supp. at 49-50.

Defendants' former law firm did not have an office or do business in the District of Columbia.  Defendants were not and are not licensed to practice law in the District of Columbia, and no other lawyer in the Corporation was licensed to practice in the District of Columbia. Neither Defendants nor the Corporation have ever been counsel or co-counsel in any litigation in the District of Columbia, and did not have clients in the District of Columbia and thus did not receive income or revenue from the District of Columbia.[18] The contracts at issue were executed by the Corporation in Chicago.

The meeting that Plaintiff alleges occurred in the District of Columbia between Fulcrum Law Group and the Corporation was attended by Defendant Bryant, solely in his role as representative for the Corporation. As Plaintiff alleges, Defendant Bryant was there to raise ethical concerns about the potential relationships between Fulcrum and the Corporation; there is no contention that that meeting was central to the negotiation or performance of the contracts. Compl. ¶17.[19]

As *Mitchell Energy Corp.*, *D'Onofrio* and *Richard* demonstrate, these facts would not subject even the Corporation to personal jurisdiction in the District of Columbia, much less the individual Defendants and Mr. DeBofsky. *A fortiori*, any contact with the District of Columbia

---

[18] See Exhibit B ¶¶4-12, Exhibit C ¶¶4-12 and Exhibit D ¶¶4-12.

[19] See Exhibit B ¶20.

with Plaintiff's predecessor by the Corporation cannot subject an individual Defendant to personal jurisdiction in the District of Columbia.

## II. The Complaint Fails to State A Cause of Action Against Defendants.

Plaintiff's Complaint fails to meet the essential pleading requirements of Rules 8(a) and 12(b)(6) of the Federal Rules of Civil Procedure and, therefore, the Complaint should be dismissed in its entirety. *See* Fed. R. Civ. Proc. 12(b)(6) (defendant may move to dismiss a complaint or cause of action that "fail[s] to state a claim upon which relief can be granted"); Fed. R. Civ. Proc. 8(a) (complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief"). *See also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (to meet the Rule 8(a) pleading standard, complaint must contain "enough facts to state a claim for relief that is plausible on its face" and "nudge[] their claims across the line from conceivable to plausible"). The plaintiff must "articulate facts . . . that show that the plaintiff has stated a claim entitling him to relief." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly,* 550 U.S. at 557). The court must accept as true all well-pleaded factual allegations and "determine whether they plausibly give rise to an entitlement of relief." *Id*. at 1950. A plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *Twombly,* 550 U.S. at 556 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation")). *See also Kowal v. MCI Communications Corp.,* 16 F.3d 1271, 1276 (D.C. Cir. 1994).

Thus, a complaint is adequately pled only "when the plaintiff pleads *factual* content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Iqbal,* 129 S. Ct. at 1949 (emphasis added).  "Where the well-pleaded facts do not

permit the court to infer more than the mere possibility of misconduct, the complaint has alleged

— but it has not shown — that the pleader is entitled to relief," and it must therefore be

dismissed.  *Id.* at 1950 (internal quotations and brackets omitted).  In deciding a motion to

dismiss, the court "'may consider the facts alleged in the complaint, documents attached to the

complaint as exhibits or incorporated by reference, and matters about which the [C]ourt may take

judicial notice.'"  *Thompson v. HSBC Bank USA, N.A.,* 850 F. Supp. 2d 269, 273 (D.D.C. 2012)

(quoting *Cole v. Boeing Co.*, 845 F. Supp. 2d 277, 283 (D.D.C. 2012*)).  See also English v. D.C.,*

717 F.3d 968, 971 (D.C. Cir. 2013).[20]  None of the counts of the Complaint satisfy the

requirements to permit the Complaint to survive dismissal at the pleading stage.

**A.   Plaintiff's claims for breach of contract (Counts I and V) should be dismissed because Defendants were not parties to the contracts in question and cannot be held liable for any breaches of contract allegedly committed by the Corporation**

Under District of Columbia law, to state a claim for breach of contract, a plaintiff must

allege:

> (1) a valid contract *between the parties*;
> (2) an obligation or duty arising out of the contract
> (3) a breach of that duty; and
> (4) damages caused by breach.

*Thompson*, 850 F. Supp. 2d at 276 (emphasis added).  *See also Logan v. LaSalle Bank Nat. Ass'n*,

80 A.3d 1014, 1023 (D.C. 2013).  Here, Plaintiff's breach of contract claims, alleged in Counts I

and V of the Complaint, do not survive the first hurdle: the existence of a valid contract *between*

*the parties*.

The two contracts that are at issue in the Complaint are the Strategic Alliance Co-Counsel

Agreement ("SACCA"), and the Fulcrum-Alliance Archive Sublicense Agreement ("FAASA")

---

[20] Here, Plaintiff has attached two agreements and amendments to the agreements to its Complaint.

(together, "the Agreements").  Compl. ¶¶21, 30.  As both Agreements make clear, there were

only three parties to each: the Corporation, Mr. Jonathan M. Feigenbaum,[21] and Fulcrum Law

Group, LLC.  Exhibit 1 to the Compl. at 19 (hereinafter, the "SACCA"); Exhibit 2 to the Compl.

at 13 (hereinafter, the "FAASA").[22]  The same parties, with the addition of Equitas Disability

Advocates, LLC, later signed amendments to both the SACCA and the FAASA that assigned the

Fulcrum Law Group's "rights, duties, and obligations arising under the Agreement[s]" to

Equitas, and substituted Equitas for Fulcrum "as a party to the Agreement[s]."  Amendments ¶ 2.

As alleged in the Complaint, and as evidenced in the Agreements themselves, Defendants

Bryant and Daley and Mr. DeBofsky were not parties to the Agreements or to the Amendments

thereto.  The SACCA was "made and entered into by and among the law firms [of] Fulcrum Law

Group, LLC, . . . [and] Daley, DeBofsky & Bryant . . . and Jonathan M. Feigenbaum, an

attorney."  SACCA at 1.  Likewise, the FAASA was "made and entered into "by and between the

Fulcrum Law Group, LLC, a Washington D.C. law firm," "Daley, DeBofsky & Bryant, an

Illinois law firm," and "Jonathan M. Feigenbaum, an attorney."  FAASA at 1.  Defendant Bryant

signed both Agreements on the Corporation's behalf.  *See* SAACA ¶11(h) ("Each firm and the

individual executing and delivering this Agreement *of such Firm*, jointly and severally, represent

that the individual executing and delivering this Agreement *for and on behalf of the Firm*

possesses all necessary power and authority to act for and to execute and bind *such Firm* to this

Agreement") (emphasis added); *see also* FAASA ¶17.12 ("Each party and the individual

---

[21] While Mr. Feigenbaum was a party to the agreements in question, Plaintiff has dismissed him from this action, presumably because the Agreements contain arbitration provisions that are binding on the parties thereto.  *See* Compl. 6 n.1.  The arbitration clauses are not binding on Defendants (or Mr. DeBofsky) precisely because they are not parties to the Agreements.  By the same token, Defendants (and Mr. DeBofsky) are not amenable to suit for breach of those Agreements.

[22] Amendments to both the SACCA and the FAASA were later executed noting that Fulcrum Law Group, PLLC was improperly identified in both the SACCA and the FAASA as "Fulcrum Law Group, LLC."  SACCA, First Amendment to Strategic Alliance Co-Counsel Agreement ¶ 1; FAASA, First Amendment to Fulcrum-Alliance Archive Sublicense Agreement ¶ 1 (together, the "Amendments").

executing and delivering this Agreement *of each party*, jointly and severally, represent that the individual executing and delivering this Agreement *for and on behalf of a party* possesses all necessary power and authority to act for and to execute and bind *such party* to this Agreement") (emphasis added).   Moreover, both Agreements are subject to mandatory and binding arbitration[23]; an Order issued by a JAMS Arbitrator on May 20, 2014 found that "[n]one of Messrs. Daley, DeBofsky and Bryant was a party to either of the two contracts on which Claimants base their claim, nor does their potential liability for pro rata shares of corporate assets that may have been distributed to them upon the dissolution of Daley DeBofsky & Bryant PC render them 'successors' under the SACCA."  *See* May 20, 2014 JAMS Arbitration Order, attached hereto at Exhibit G.

Because Plaintiff's allegations and the Agreements themselves demonstrate that the Defendants were not parties to the contract, no breach of contract claim may be brought against them.[24]  In an effort to circumvent the inability to plead a breach of contract by these Defendants, Plaintiff makes conclusory allegations in an effort to hold the Defendants responsible for the acts of the Corporation.

As to Defendant Bryant, Plaintiff alleges that he is liable for the alleged breaches of contract committed by the Corporation "in his capacity as an *alter ego* of [the Corporation]."  As shown next, Plaintiff offers no facts whatsoever to support this assertion.  As to all Defendants, Plaintiff alleges they are liable under D.C. Code Section 29-312.07 as former shareholders of the Corporation.  Compl. ¶¶44.

---

[23] *See* SACCA ¶ 11(g); FAASA ¶ 17.2.

[24] Even were this Court to find that Defendants were parties to the Agreements, this matter should nevertheless be dismissed because the Agreements both contain identical arbitration clauses requiring that "[a]l disputes arising under or in connection with [either] Agreement or involving the interpretation, performance or breach of [either] Agreement will be finally settled by final and binding arbitration administered by and in accordance with the then existing JAMS Streamlined Arbitration Rules and Procedures." SACCA. ¶ 11(g); FAASA ¶ 17.2.

**i.   Defendant Bryant cannot be held liable for the acts of the Corporation in his individual capacity as an alter ego of the Corporation because Plaintiff does not allege facts sufficient to establish a piercing of the corporate veil.**

Plaintiff has asserted no fact concerning Defendant Bryant (or otherwise) to overcome the "general rule . . . that a corporation is regarded as an entity separate and distinct from its shareholders." *Ruffin v. New Destination, LLC*, 773 F. Supp. 2d 34, 40 (D.D.C. 2011).  *See also Estate of Raleigh v. Mitchell*, 947 A.2d 464, 469 (D.C. 2008).  "Courts reserve piercing the corporate veil for the rare circumstances in which an individual or corporation abuses the corporate form or exerts undue influence over a corporate entity to accomplish an improper or unlawful purpose."  *Amore v. Accor north America, Inc*., 529 F. Supp. 2d 85, 93 (D.D.C. 2008). Under District of Columbia law, "[a] party seeking to pierce the corporate veil must prove 'by affirmative evidence that [there is] (1) unity of ownership interest, and (2) use of the corporate form to perpetrate fraud or wrong,'" or the presence of "other considerations of justice and equity."  *Id*. (quoting *Ivanov v. Sunset Pools Mgmt., Inc.,* 524 F. Supp. 2d 13, 15 (D.D.C. 2007)); *Estate of Raleigh v. Mitchell*, 947 A.2d 464, 470 (D.C. 2008).

To determine whether a corporate veil should be pierced, courts inquire into a variety of factors, including:

1)   whether corporate formalities have been observed;
2)   whether there has been commingling of corporate and shareholder funds, staff and property;
3)   whether a single shareholder dominates the corporation;
4)   whether the corporation is adequately capitalized; and, especially,
5)   whether the corporate form has been used to effectuate a fraud.

*Ruffin*, 773 F. Supp. 2d at 40 (quoting *Lawlor v. District of Columbia*, 758 A.2d 964, 975 (D.C. 2000)).  "The inquiry ultimately turns on whether the corporation is, in reality, an *alter ego* or business conduit of the person in control."  *Id*. (quoting *Lawlor*, 758 A.2d at 975).

Plaintiff has failed to plead any facts to satisfy the pleading requirements of Federal Rule of Civil Procedure (8)(a) with respect to the veil piercing factors.  Plaintiff's Complaint makes *no* allegations that corporate formalities were not observed; *no* allegation that there was a commingling of corporate and shareholder funds; *no* allegation that Mr. Bryant (or any other shareholder) dominated the Corporation; *no* allegation that the Corporation was not adequately capitalized; and *no* allegation that the Corporation was fraudulently used to protect Defendant Bryant's personal assets.  "Plaintiffs who seek to hold persons individually liable by piercing the corporate veil must plead *facts* that show that the defendant is the alter ego of the corporate entity."  *Ruffin*, 774 F. Supp. 2d at 41 (emphasis added).  Here, no such facts have been pleaded. Because Plaintiff has not pleaded facts showing that Defendant Bryant is the alter ego of the Corporation, the Corporation's acts – including any alleged breach of contract – cannot be imputed to Defendant Bryant.[25]

### ii.   Defendants cannot be held liable as former shareholders of the Corporation under D.C. Code Section 29-312.07.

In three of its Counts, Plaintiff makes the assertion, unsupported by any facts, that Defendants are somehow liable to it pursuant to D.C. Code § 29-312.07. (Compl. ¶¶ 45, 50, 54). Section 29-312.07 is part of the Business Corporations Chapter of the D.C. Code and it describes certain remedies upon the dissolution of a corporation.  Plaintiff's assertion that this portion of the D.C. Code applies to an Illinois corporation with no registration or other contacts with the District of Columbia borders on the absurd.  The Section deals with "dissolved corporations." "Corporation" is defined in the Chapter as "a corporation for profit, which is not a foreign

---

[25] Even were this Court to find that Defendant Bryant was the alter ego of the Corporation, the claims against him should nevertheless be dismissed because those claims would then be subject to binding arbitration under the Agreements, which require that "[a]ll disputes arising under or in connection with [either] Agreement or involving the interpretation, performance or breach of [either] Agreement will be finally settled by final and binding arbitration administered by and in accordance with the then existing JAMS Streamlined Arbitration Rules and Procedures." SACCA ¶ 11(g); FAASA ¶ 17.2.

corporation, incorporated under or subject to this chapter." D.C. Code §29-301.02(4). Thus, by its own terms, the D.C. statute has no application to the Illinois former law firm or its shareholders. Moreover, in the absence of any factual allegations supporting such a claim, the Complaint fails to satisfy the pleading requirements of Federal Rule of Civil Procedure 8(a) and should be dismissed for that reason as well.

### B. Plaintiff's claim for breach of the implied covenant of good faith and fair dealing (Count II) should be dismissed because it can arise only out of contracts to which Defendants were not a party.

"[A] claim for beach of the implied covenant of good faith and fair dealing cannot exist in the absence of a contractual relationship." *Busby v. Capital One, N.A.,* 772 F. Supp. 2d 268, 284 (D.D.C. 2011). *See also Murray v. Wells Fargo Home Mortgage,* 954 A.2d 308, 321 (D.C. 2008). Indeed, Plaintiff alleges that entering into the SACCA and the FAASA with the Corporation "result[ed] in an implied contractual duty of good faith and fair dealing." Compl. ¶ 47.

As demonstrated above, because neither Defendant was a party to the Agreements, no breach of contract claim can stand. Defendants were not parties to the Agreements, and because a claim for breach of the implied covenant of good faith and fair dealing can arise only from the presence of a contract between the parties, Count II of the Complaint must be dismissed for failure to state a claim upon which relief may be granted.

### C. Plaintiff's unjust enrichment claim (Count III) should be dismissed because Plaintiff has failed to plead sufficient facts to support such a claim.

To state a claim for unjust enrichment in the District of Columbia, it must be alleged that:

(1) the plaintiff conferred a benefit upon the defendant;

(2) the defendant accepted and retained the benefit; and

(3) it would be unjust for the defendant to retain the benefit under the circumstances.

18

*McIntosh v. Gilley*, 753 F. Supp. 2d 46, 60 (D.D.C. 2010).  *See also Euclid St., LLC v. D.C. Water & Sewer Auth.,* 41 A.3d 453, 463 n.10 (D.C. 2012).

Where "[a] defendant is a stockholder of a corporation that received a benefit from the plaintiff[,] [t]he plaintiff may only rely on an inference that a stockholder by means of his corporate equity received a benefit *if the plaintiff shows that the stockholder abused the corporate form, using it as his own alter ego to perpetrate fraud—* in which case, the corporate veil should be pierced."  *U.S. ex rel. Purcell v. MWI Corp.*, 520 F. Supp. 2d 158, 173 (D.D.C. 2007) (emphasis added).  Where the benefit was conferred on a corporation and not on an individual defendant, and where the plaintiff has not shown that the defendant was using the corporation as his alter ego, an unjust enrichment claim will not stand.  *See id*. (finding that no benefit was conferred on defendant individually and granting defendant's motion for summary judgment on plaintiff's unjust enrichment claim where defendant and his family were the sole shareholders and defendant was the president of a corporation that filed falsified certificates for reimbursement with the United States Export-Import Bank and 43 out of 48 falsified certificates were signed by defendant).

Here, Plaintiff did not confer a benefit on Defendants.  Instead, Plaintiff entered into a business relationship with the Corporation.  *See* Compl. ¶¶21, 30.  The alleged benefit in question, specifically access to an "Archive" comprised of theories of recovery for disability insurance claimants that was intended to generate attorneys' fees, *see* Compl. ¶¶10, 11, 52, was allegedly conferred not upon Defendants individually but rather upon the Corporation as a whole.  As such, the Complaint has not alleged an unjust retention of any alleged benefit by Defendants individually because no such benefits were ever conferred upon Defendants or retained by them.  Moreover, Plaintiff has failed to allege that Defendants were the alter ego of

the Corporation and that the corporate veil should be pierced to extend liability for any alleged

unjust enrichment to Defendants individually.  Because Plaintiff has not pleaded sufficient facts

to allege a claim for unjust enrichment against Defendants, the claim must be dismissed.

Alternatively, if the Court finds that a valid contract existed between the parties,

Plaintiff's unjust enrichment claim should nevertheless be dismissed because an unjust

enrichment claim in the District of Columbia cannot exist in the presence of a contract.

*McIntosh,* 753 F. Supp. 2d at 60 ("As an unjust enrichment claim arises in the absence of

a contract, one is unable to recover under an unjust enrichment theory when a contract governs

the parties' relationship").

### D.  Plaintiff's fraud claim (Count IV) should be dismissed for failure to plead facts sufficient to withstand the pleading requirements of Federal Rules of Civil Procedure 8(a) and 9(b).

The requisite elements for a fraud claim are:

1)  A false representation,
2)  in reference to a material fact,
3)  made with knowledge of its falsity,
4)  with the intent to deceive, and
5)  action is taken in reliance upon the representation.

*Busby*, 772 F. Supp. 2d at 275.  *See also Drake v. McNair*, 993 A.2d 607, 622 (D.C. 2010).  To

prevail on a claim for fraud, "'the plaintiff must also have suffered some injury as a consequence

of his reliance on the misrepresentation.'"  *Busby,* 772 F. Supp. 2d at 275.

As an initial matter, Plaintiff has no basis for a claim of fraud because there is no

allegation of misrepresentation to Plaintiff.  All of the alleged misrepresentations were allegedly

made to Fulcrum Law Group (*see* Compl. ¶¶ 56-60).  Although Fulcrum's rights under the

contractual agreements between it and the Corporation were assigned to Plaintiff, there was no

assignment by Fulcrum Law Group to Plaintiff of any cause of action or claim for fraud.  The

Amendments to the Agreements in question assigned to Equitas only Fulcrum Law Group's

"rights, duties, and obligations *arising under the Agreement[s.]*"  Amendments ¶ 2, included as

parts of Exhibits 1 and 2 of the Complaint (emphasis added).  Although a party generally may

assign rights to another, the scope of the assignment is determined by the terms of that

assignment.  *See Direct Supply, Inc. v. Specialty Hospitals of America, LLC,* 878 F. Supp.2d 13,

19-20 (D.D.C. 2012).  Where, as here, the assignment is made pursuant to a contract, standard

contract construction principles apply.  Under long-standing principles of District of Columbia

law, the plain and unambiguous meaning of a written agreement is controlling in the absence of

some clear evidence of contrary intention.  *Vogel v. Tenneco Oil Co.,* 465 F.2d 563 (D.C. Cir.

1972). Here, under the unambiguous language of the assignments to Plaintiff, only Fulcrum's

rights "arising under the Agreement[s]" with the Corporation were assigned.  There was no

assignment of rights to pursue any claims that Fulcrum may have had for fraud.  As a result,

Equitas does not have standing to bring a claim for fraud against any Defendant.

   Moreover, Plaintiff's fraud claim should be dismissed because it fails to plead facts

sufficient to meet the pleading requirements of the Federal Rules of Civil Procedure.  Federal

Rule of Civil Procedure 9(b) imposes a heightened pleading standard for fraud claims; the

complaint "must state with particularity the circumstances constituting fraud."  The D.C. Circuit

has found that, in combination, Rules 8(a) and 9(b) require "'that the pleader . . . state the time,

place, and content of the false misrepresentations, the fact misrepresented, and what was retained

or given up as a consequence of the fraud.'"  *U.S. ex rel. Williams v. Martin-Baker Aircraft Co.*,

389 F.3d 1251 (D.C. Cir. 2004) (affirming lower court's dismissal of fraud claim for failure to

meet Rule 9(b)'s heightened pleading standard where plaintiff failed to plead with sufficient

particularity the time period of the alleged misrepresentation, the individuals involved in the

allegedly fraudulent activity, or the facts allegedly misrepresented) (quoting *Kowal*, 16 F.3d at 1278).

Here, Plaintiff has failed to plead facts sufficient to meet the heightened pleading standard.  Although it is difficult to determine what specific facts Plaintiff is alleging in support of its claim of fraud, it seems to be relying on the following alleged misrepresentations:

- that the Corporation had "at least 30 cases . . . that would benefit from the theories developed" by Plaintiff; that the statement about the 30 cases allegedly "suggested a large number of pending cases" that would generate fees for Plaintiff through a fee-sharing agreement; and that "one or more of such pending case" could be suitable for conversion to a class action, Compl. ¶14;

- that Defendant Bryant allegedly  "agreed" that "high-profile and highly successful plaintiff's-side class action law firms" would "immediately see the value of" Plaintiff's theories of recovery and partner with Plaintiff and the Corporation in class and mass actions "on behalf of potentially thousands of disability insurance claimants," Compl. ¶15;

- that Defendant Bryant allegedly misrepresented the "quality' of the cases that would benefit from Plaintiff's theory and that he "knowingly made false representations about his and [the Corporation's] intent to co-counsel with Plaintiff and share fees, Compl. ¶¶56, 58;

- that the "concerns that [Defendant Bryant] may have had about sharing fees with a law firm that had a non-lawyer partner were allayed" and that such arrangements were "not objectionable" under the ethical rules, Compl. ¶¶18, 57,

but that Defendant Bryant later stated that his and the Corporation's alleged

reluctance to share fees with Plaintiff was because "sharing fees with a non-

lawyer partner raised ethical concerns," Compl. ¶41;

- that Defendant Bryant and the Corporation were "deliberately concealing cases
  from Plaintiff that were subject to the fee allocation provisions;" that they were
  "deliberately withholding money due to Plaintiff" under the Agreements; and that
  they were "deliberately misrepresenting and concealing information about cases
  covered by the fee allocation provisions", Compl. ¶37;

- that Defendant Bryant and others allegedly filed a lawsuit which resulted in
  substantial fees and did not remit to Plaintiff any portion of the amount that it was
  owed, Compl. ¶38; and

- that Defendant Bryant and the Corporation shared materials from the Archive
  with another attorney and failed to communicate further with Plaintiff regarding
  the attorney's status as a co-counsel, and that the other attorney relied on
  information in the Archive to obtain a settlement in an amount of which Plaintiff
  was not advised and from which fees were not remitted to Plaintiff, Compl. ¶39.

To the extent that any of these assertions rise to the level of a misrepresentation, the

majority of these allegations arise out of alleged misrepresentations related to the Agreements,

and not out of an independent tort-based duty running from Defendants to Plaintiff.  As such,

these claims fail to allege a claim for fraud under D.C. law.  In *EDCare Management, Inc. v.

DeLisi*, 50 A.3d 448 (D.C. 2012), an emergency-care management agency filed a fraudulent

misrepresentation claim against the CEO of a hospital with which the agency had a contract.

The CEO had allegedly made false representations to the agency about the hospital's financial circumstances and its ability to make payments owed to the agency.  *Id*. at 450.  The court found that, in order to bring a claim in tort, the claim "'must exist in its own right independent of the contract, and any duty upon which the tort is based must flow from considerations other than the contractual relationship.  The tort must stand as a tort even if the contractual relationship did not exist.'"  *Id*. at 452 (quoting *Choharis v. State Farm Fire and Casualty Co*., 961 A.2d 1080, 1089 (D.C. 2008), where an insured homeowner brought a fraud claim against his insurance carrier and the court found that, because there was no duty as between the insurance carrier and the insured that arose independent of the contract itself, the fraud claim could not stand).  The court in *EdCare Management, Inc*. found that the CEO of the hospital had no duty independent of the contract in question to make truthful representations to the agency; as such, the alleged misrepresentation was not independent of the contract, and a claim for fraud could not stand.  *Id*.

In *Thermal Dynamics Intern., Inc. v. Safe Haven Enterprises*, *LLC*, 952 F. Supp. 2d 143 (D.D.C. 2013), a subcontractor sued a government contractor for fraudulent misrepresentation related to statements concerning whether the contractor had received payment from the State Department for work performed by the subcontractor.  The subcontractor claimed that, "[a]s a result of the Subcontract," the government contractor owed the subcontractor a duty to "communicate carefully and honestly" regarding its communications with the State Department and any payments it received from it.  *Id*. at 151-52 (quoting subcontractor's complaint).  Quoting *Choharis*, 961 A.2d at 1089, the court stated that

> conduct occurring during the course of a contract dispute may be the subject of a fraudulent or negligent misrepresentation claim when there are facts separable from the terms of the contract upon which the tort may independently rest and when there is a duty independent of that arising out

> of the contract itself, so that an action for breach of contract would reach
> none of the damages suffered by the tort.

*Id*.  Because the subcontractor's "allegations of negligent and fraudulent misrepresentations by

the [government contractor] are inseparable from the subcontract," and because "[w]holly absent

from the Complaint is any allegation that the [government contractor] had a 'duty independent of

that arising out of the [sub]contract itself,'" the court found that the complaint failed to state a

claim for fraud under District of Columbia law.  *Id*. at 152-53 (quoting *Choharis*, 961 A.2d at

1089).

Most recently, in *Sabre Int'l Sec. v. Torres Advanced Enter. Solutions*, No. 11-806, --- F.

Supp. 2d ---, ---, 2014 WL 341071 (D.D.C. Jan. 30, 2014), attached hereto as Exhibit H, an Iraqi

security firm brought a claim for fraud against an American security firm with which it was

contracting on government projects.  Plaintiff alleged that the American security firm made false

representations to Plaintiff regarding its intention to pay Plaintiff's invoices, and that it made

false representations to the government regarding the fact that it was current on its payments to

Plaintiff.  *Id*. at *3, 4.  Relying again on *Choharis*, the court found that there were no facts

separable from the contract upon which the tort of fraud could rest, and that there was no duty

independent of any duty arising out of the contract such that a claim for fraud could stand.  *See*

*id*. at *3.  The court further stated that "even a 'willful, wanton or malicious breach of a contract

to pay money cannot support a claim of fraud.'"  *Id*. (quoting *Choharis*, 961 A.2d at 1089).

Like the defendants in *EdCare, Thermal Dynamics Intern., Inc*. and *Sabre Int'l Sec*.,

Defendants in this case similarly had no duty to Plaintiff independent of any duties that may have

arisen under the Corporation's contract with Plaintiff.  Outside of the Agreements themselves,

there was no duty to make representations to Plaintiff regarding the appropriateness of sharing

fees among lawyers and non-lawyers, no duty to share cases or profits with Plaintiff, and no duty

to share information with Plaintiff about the status of lawsuits filed or settlement agreements reached.  Under the law of this jurisdiction, Plaintiff's claim for fraud based on misrepresentations related to duties arising under the Agreements cannot stand.

Plaintiff's remaining allegations, related to the number of cases that may benefit from Plaintiff's theories, the quality of those cases, or the potentially lucrative class action lawsuits that might result, likewise fail to plead a claim for fraud because they are not false representations about material facts made with knowledge of their falsity and with an intent to deceive; rather, they are, at the most, "'commercial puffery on which no reasonable person would rely.'" *Jefferson v. Collins*, 905 F. Supp. 2d 269. 283 (D.D.C. 2012) (quoting *Pearson v. Chung*, 961 A.2d 1067, 1076 (D.C. 2008)).  Puffery is defined as "the exaggerations reasonably to be expected of a seller as to the degree of quality of his product, the truth or falsity of which cannot be precisely determined."  *Id*. (quoting *Tietsworth v. Harley-Davidson, Inc.,* 677 N.W.2d 233, 245 (2004)).

Defendant Bryant's alleged statements about having "at least 30 cases" that could be pursued based on Plaintiff's theories and the alleged "quality" of those cases, as well as his musings about "high-profile and highly successful plaintiff's-side class action law firms" that would "immediately" see the value of Plaintiff's theories of recovery and partner with Plaintiff and the Corporation in class and mass actions "on behalf of potentially thousands of disability insurance claimants," Compl. ¶¶ 14, 15, 58, would have been merely "'generalized positive statements . . . [that] are not the type of statement upon which a reasonable investor would rely.'" *Jefferson,* 905 F. Supp. 2d at 283 (quoting *In re XM Satellite Radio Holdings Sec. Litig*., 479 F. Supp. 2d 165, 180 (D.D.C. 2007)).  They were nothing more than puffery by a seller (here, the Corporation) about the degree or quality of its product (here, the legal services offered by the

Corporation and the potential benefits of a partnership between the Corporation and Plaintiff). As such, the alleged statements were not false representations about material facts but at most were merely puffery upon which a fraud claim cannot rest.

Plaintiff's fraud claim fails to meet the heightened pleading standard required for fraud by Federal Rule of Civil Procedure 9(b) with respect to other elements, as well. The Complaint often fails to identify the false representations that it alleges, it fails to plead that any such allegedly false representations were made with knowledge of their falsity or with intent to deceive Plaintiff, and it fails to allege the specific time that the alleged misrepresentations were made. Likewise, Plaintiff fails to provide factual allegations in support of its justified reliance on any such misrepresentations. For example, Plaintiff claims that it continued to provide "Defendant Bryant and [the Corporation] with reasonable access to [its theories of recovery for disability insurance claimants] and to . . . provide [them with] legal and consulting service" after Plaintiff entered into the Agreements with the Corporation. Compl. ¶¶59, 60. Plaintiff admits, however, that it had "began to suspect that Defendant Bryant and [the Corporation] were deliberately concealing cases from Plaintiff," that they were "deliberately withholding money due to Plaintiff" under the Agreements, and that they were "deliberately misrepresenting and concealing information about cases covered by the fee allocation provisions" of the Agreements. Compl. ¶37. Moreover, Plaintiff "raised concerns on numerous occasions with Defendant Bryant and [the Corporation]" about these issues. *See* Compl. ¶40. Plaintiff's admissions clearly demonstrate that Plaintiff did not, in fact, rely upon these allegedly false representations made by Defendant Bryant, but that Plaintiff instead doubted and questioned the representations that were allegedly being made to it. Plaintiff has failed to sufficiently plead the elements required for fraud, and Plaintiff's claim should be dismissed.

## CONCLUSION

For all the foregoing reasons, Defendants Bryant and Daley respectfully request that the

Complaint be dismissed with prejudice.

THOMPSON O'DONNELL, LLP

*/s/ Randell Hunt Norton*
Randell Hunt Norton, # 187716
rhn@tomnh.com
Kenneth G. Stallard, # 419443
kgs@tomnh.com
Autumn R. Agans, #1020665
ara@tomnh.com
4100 N. Fairfax Drive, Suite 740
Arlington, VA 22203
202.289.1133
*Attorneys for Defendants*
*Bryant and Daley*